# UNITED STATES DISTRICT COURT

for the
District of South Dakota
Western Division

5:23-mj-180

In the Matter of the Search of:       )
                                      )       Case No. 5:23-mj-
USA v. 23-170-05                      )
                                      )
                                      )
                                      )
                                      )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, which is attached to and incorporated in this Application and Affidavit

located in the District of  South Dakota , there is now concealed *(identify the person or describe the property to be seized)*:

See **ATTACHMENT B**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512(c)(2) | Tampering with a Witness |
| 18 U.S.C. §§ 1153 & 113(a)(3) | Assault with a Dangerous Weapon |
| 18 U.S.C. §§ 1153 & 113(a)(6) | Assault Resulting in Serious Bodily Injury |
| 18 U.S.C. §§ 1153 & 113(a)(8) | Assault of Intimate Partner by Strangling |

The application is based on these facts:

☒ Continued on the attached affidavit, which is incorporated by reference.

☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

Felix Nez, Criminal Investigator, OSTDPS
*Printed name and title*

Sworn to before me and: ☒ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

Date:   August 30 , 2023

_____
*Judge's signature*

City and state:  Rapid City, SD

Daneta Wollmann, U.S. Magistrate
*Printed name and title*

## ATTACHMENT A

5:23-mj-180

### Property to Be Searched

This warrant applies to information associated with the Facebook user with username "Cruz Villareal," and URL: https://www.facebook.com/100093578674735, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. (formerly Facebook Inc.), a company headquartered in Menlo Park, California.

5:23-mj-180

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. (formerly Facebook Inc., hereinafter "Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including for Facebook user with username "Cruz Villareal" and URL https://www.facebook.com/100093578674735: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend

lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1153 and 113(a)(3), 113(a)(6), and 113(a)(8), Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Assault of Intimate Partner by Strangling, and 18 U.S.C. § 1512(c)(2), Tampering with a Witness, from August 2, 2023 to the present, including for each user identified on Attachment A.

3

Please fill out this form and return it with your subpoenaed records  It may avoid the necessity of someone from your office having to appear at trial and testify as to the authenticity of the records.  Thank you)

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by

_____, hereinafter PROVIDER), and my title is _____.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER.  The attached records consist of (generally describe records, i.e., number of pages/CDs/megabytes) _____

_____.

I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b. such records were generated by PROVIDER'S electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                      Signature

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

5:23-mj-180

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>USA v. 23-170-05 | Case No. 5:23-mj-<br><br>AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT |

STATE OF SOUTH DAKOTA    )
                                                  )  ss
COUNTY OF PENNINGTON    )

I, Felix Nez, Criminal Investigator with the Oglala Sioux Tribe, being duly sworn, states as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.    I have been a Special Agent with the Oglala Sioux Tribe Department of Public Safety ("OSTDPS") since March 2023. I investigate a multitude of Federal criminal violations occurring in Indian country on the Pine Ridge Reservation.

3.    Prior to my employment with OSTDPS, I served as a law enforcement officer with OSTDPS beginning in 2018. I have been a sworn law enforcement officer since 2017.

4.      The information set forth below is based upon my knowledge of an investigation conducted by the OSTDPS and the investigation of other law enforcement agents and officers.  I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

## ITEMS TO BE SEARCHED FOR AND SEIZED:

5.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A.   This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

6.      Based on my training, experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of  18 U.S.C. §§ 1153 and 113(a)(3), 113(a)(6), and 113(a)(8), Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Assault of Intimate Partner by Strangling, and 18 U.S.C. § 1512(c)(2), Tampering with a Witness, are present in

2

the account of Facebook user ""Cruz Villareal" and URL https://www.facebook.com/100093578674735 (the "Target Account"). There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

## **FACTS IN SUPPORT OF PROBABLE CAUSE**

8.    On August 3, at approximately 1:22 p.m, Lacie Rodriguez reported that her significant other, Cruz Gibbons, had recently assaulted her in Manderson, South Dakota.

9.    Your affiant learned an officer met with Rodriguez at a residence and observed Rodriguez appeared to be in pain, and was shaking and crying. Rodriguez had large fresh redness, swelling, and bruising on her back, which began on her upper left shoulder and continued down to the middle of her back. She also had older bruises on her back. Rodriguez had fresh bruising to her forearms and long scrapes and bruising on her thighs. On either side of her upper thighs, significant dark purple bruising was present.

10.    Your affiant learned that the night of August 2, 2023, Gibbons picked up Rodriguez and drove her to Manderson, South Dakota, to his father's residence. Gibbons took Rodriguez to Gibbons' camper, which is parked on his father's property. Gibbons appeared to be intoxicated.

11.    At the camper, Gibbons called Rodriguez a whore and told her that she deserved what was about to happen to her.

12. Gibbons then began punching and kicking Rodriguez.

13. Rodriguez hid her face attempting to protect herself from the assault.

14. Gibbons then beat Rodriguez with a 2x4 board, a chain with a golden weight at its end, a metal bar, and a long measuring tool.

15. Gibbons strangled Rodriguez by squeezing her neck with his arm. Rodriguez went unconscious during the strangulation.

16. During the assault, Gibbons took Rodriguez' phone, preventing her from calling the police.

17. During the assault, Gibbons continued saying Rodriguez deserved this.

18. At some point, Rodriguez noticed the sun was starting to come up.

19. Rodriguez blacked out and when she regained consciousness, she saw Gibbons going through her phone. He then threw her phone at the wall. Rodriguez was able to convince Gibbons to take her back to her home in Pine Ridge, where she then called the police.

20. Investigators executed a tribal search warrant on Gibbons' camper in Manderson. In the camper, investigators located a golden weight attached to a metal cable; a long metal car jack handle; and a long measuring level tool.

21. Your affiant learned that after the assault, Gibbons messaged Rodriguez using the Facebook Messaging app and apologized to her for the assault.

22.    Your affiant also learned that around the week of August 13, 2023, Gibbons' father, David Gibbons ("David") called Rodriguez and asked her to drop the charges against Gibbons.

23.    David admitted to your affiant that Cruz Gibbons contacted David from the Pine Ridge jail.

24.    Your affiant learned Gibbons messaged Rodriguez using the username "Cruz Villareal" and URL https://www.facebook.com/100093578674735.

25.    Your affiant is aware this Facebook profile belongs to Cruz Gibbons.

26.    Your affiant learned Gibbons and Rodriguez met over Facebook and their primary mode of communicating with each other has been Facebook Messenger.

27.    Your affiant is requesting a search and seizure warrant for the Target Account. Your affiant believes that evidence of 18 U.S.C. §§ 1153 and 113(a)(3), 113(a)(6), and 113(a)(8), Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Assault of Intimate Partner by Strangling, and 18 U.S.C. § 1512(c)(2), Tampering with a Witness, will be found within the Target Account.

**INFORMATION ON FACEBOOK**

28.    Meta Platforms, Inc. owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.    Facebook allows individuals to specifically

5

communicate with another person through a Facebook application called "Messenger." In my training and experience, people who engage in criminal activity often utilize Facebook to communicate about those activities.

29.   Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

30.   Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

31.   Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's

account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

32. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

33. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can

7

post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

34. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

35. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date and time of each call.

36.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

37.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  In addition to being able to "like" a post or page, Facebook users can also have other "reactions" such as a thumbs up, sad fact, or heart. Facebook users can also become "fans" of particular Facebook pages.

38.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

39.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

41.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money

9

to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

42.    Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

43.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

44.    Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

45.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by

the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

46. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

47. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data

11

retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

12

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement or discussing events surrounding a crime with other Facebook users).

48. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

49. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized people will review that information to locate the items described in Section II of Attachment B.

**REQUEST/JUSTIFICATION FOR ORDER OF NONDISCLOSURE**

50. The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the account associated with username ""Cruz Villareal" and URL https://www.facebook.com/100093578674735. The United States is seeking this search warrant for user information, including all names, addresses, IP

13

addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber. Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant. The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3). The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

## REQUEST/JUSTIFICATION ORDER TO SEAL

51.     I request an order sealing this case until further order of the Court, in that this search is being conducted as part of an ongoing federal criminal investigation and contains information from persons cooperating with law

14

enforcement.    Disclosure of information contained in the documents incorporated in this search and filed with the Court could seriously jeopardize this ongoing investigation.

## CONCLUSION

52.    I submit that based on the facts set forth in this affidavit, there is probable cause to believe the Facebook account of username "Cruz Villareal" and URL    https://www.facebook.com/100093578674735,    as    described    in Attachment A, contains evidence, fruits, and or instrumentalities of violations of 18 U.S.C. §§ 1153 and 113(a)(3), 113(a)(6), and 113(a)(8), Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, and Assault of Intimate Partner by Strangling, and 18 U.S.C. § 1512(c)(2), Tampering with a Witness.    Therefore, I request permission to search the Facebook account of Username    ""Cruz    Villareal"    and    URL https://www.facebook.com/100093578674735 in Attachment A for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

53.    Based on the foregoing, I request that the Court issue the proposed search warrant.

Felix Nez
Criminal Investigator, OSTDPS

15

Sworn to before me and: ☑ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

This __30th__ day of August, 2023.

_____
Daneta Wollmann
United States Magistrate Judge

16

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of

USA v. 23-170-05

)
)
)
)
)
)
)

Case No. 5:23-mj-    5:23-mj-180

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

    An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __South Dakota__ *(identify the person or describe the property to be searched and give its location)*:
**See ATTACHMENT A**, which is attached to and incorporated in this Application and Affidavit

    I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    Evidence of the crimes of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6), Assault of Intimate Partner by Strangling, in violation of 18 U.S.C. §§ 1153 and 113(a)(8), and Tampering with a Witness, in violation of 18 U.S.C. § 1512(c)(2), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

    I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

    **YOU ARE COMMANDED** to execute this warrant on or before ___September 13, 2023___ *(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night because good cause has been established.

    Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

    The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __Daneta Wollmann__.
                                           *(United States Magistrate Judge)*

    Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for _____ days *(not to exceed 30)*.    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __8-30-23  11:20am__      _____
                                                             *Judge's signature*

City and state: __Rapid City, SD__      __Daneta Wollmann, U.S. Magistrate__
                                                            *Printed name and title*

cc: AUSA Anna Lindrooth
kle

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:23-mj- 5:23-mj-180 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                            _____
                                               *Executing officer's signature*


                                            _____
                                                 *Printed name and title*